## John F. Coots and Ira Topping v. Willard McConnell and Byron G. Stout.

*Assignment annuls unaccepted offer of partial payment.*

Money laid aside by a banking firm to be returned to a general depositor, but not amounting to the latter's full credit, is covered by a subsequent general assignment, if not tendered and accepted before the assignment is made; and it is not freed from the assignment by afterwards charging the amount to the depositors and dating the charge as if made before the assignment.

A banking firm, just before it had determined on assigning, and before making up its cash account, marked a package of money with the name of a general depositor and the word "private." The money did not amount to the depositor's full credit. On making the assignment the firm asked the assignee to give the package to the depositor, who knew nothing of these facts till afterwards. *Held* that the money was not thereby delivered and was covered by the assignment.

A partial payment or tender is operative only when the creditor consents to receive it.

A bank can at any time tender the full balance due to a general depositor, but cannot compel him to receive less.

An offer of partial payment can be withdrawn at any time before acceptance, and is withdrawn and annulled by a general assignment.

Error to Oakland. Submitted Nov. 1. Decided Nov. 21.

Assumpsit. Plaintiffs brings error.

*Thomas A. Wilson* and *John D. Conely* for plaintiffs in error, argued that one might create a trust without the knowledge of the *cestui que trust*, make himself trustee and retain in his own custody the subject matter of the trust, and that the intent determined whether the trust had been created, and reviewed as cases supposed to support the doctrine that a person who, under other circumstances might be deemed a *cestui que trust*, has not been so regarded when he was a creditor, *Wallwyn v. Coutts*, 3 Meriv., 707: 3 Sim., 14; *Page v. Broom*, 4 Russ., 6; *Garrard v. Lord Lauderdale*, 3 Sim., 1: 2 Russ. & Myl., 451; *Acton v. Woodgate*, 2 Myl. & K., 492; *Bill v. Cureton*, 2 id., 503; *Ravenshaw v. Hollier*, 7 Sim., 3; *Gibbs v. Glamis*, 11 id., 584; *Hughes v. Stubbs*, 1 Hare, 476; *Wilding v. Richards*, 1 Collier, 655; *Kirwan v. Daniel*, 5 Hare, 493; *Griffith v. Ricketts*, 7 id., 307; *Mackinnon v. Stewart*, 1 E. L. & E., 158; *Smith v. Keating*, 6 M., G. & S., 136; trusts have been sustained in favor of creditors, *Hinde v. Blake*, 3 Beav., 234; *Exton v. Scott*, 6 Sim., 31; *Middleton v. Pollock*, L. R. 2 Ch. Div., 104; *Atkin v. Barwick*, 1 Strange 165; see *Hill*

*v. Secretan,* 1 B. & C., 315; *Haille v. Smith,* id., 563: if the right of revocation is never exercised, it cannot affect the validity of the trust, *Stone v. Hackett,* 12 Gray, 232; the trust is often sustained where the *cestui que trust* is not a creditor, *Exp. Pye,* 18 Ves., 140; *Boughton v. Boughton,* 1 Atk., 625; *Weckett v. Raby,* 1 Bro. P. C., 386; *Wheatley v. Purr,* 1 Keene, 551; *Penfold v. Mould,* L. R. 4 Eq., 562; *Stapleton v. Stapleton,* 14 Sim., 186; *Fletcher v. Fletcher,* 4 Hare, 67; one can make himself trustee, *Richardson v. Richardson,* L. R. 3 Eq., 694; *Ellis v. Secor,* 31 Mich., 191; a trust in behalf of a creditor is sufficient if either creditor or trustee assents to it, *Brooks v. Marbury,* 11 Wheat., 97; *Cunningham v. Freeborn,* 11 Wend., 250; *Tompkins v. Wheeler,* 16 Pet., 119; *Carson's Adm'r v. Phelps,* 40 Md., 73: 14 Am. L. Reg., 100; where a trust is created for a creditor he may affirm it and enforce its execution, *Ward v. Lewis,* 4 Pick., 518; a trust has been sustained when declared without the trustee's knowledge or that of the *cestui que trust, Bunn v. Winthrop,* 1 Johns. Ch., 329; *Souverbye v. Arden,* id., 239; *Howard v. Windham Bank,* 40 Vt., 597; and when it was created by merely writing or branding the name of the *cestui que trust* upon the subject matter of the trust, *Grangiac v. Arden,* 10 Johns., 292; *Hillebrant v. Brewer,* 6 Tex., 45: 15 Am. L. Reg., 706; and when the creator of the trust was himself trustee, *Ray v. Simmons,* 11 R. I., 266; 15 Am. L. Reg., 701; *Chaffee v. Fort,* 2 Lans., 81; *Witzel v. Chapin,* 3 Bradf., 389; *Ingram v. Kirkpatrick,* 6 Ired. Eq., 463; *Kinnard v. Thompson,* 12 Ala., 487; *Sharpless v. Welsh,* 4 Dal., 279.

*M. S. Brewer* and *Crofoot & Kudner* for defendants in error. A general deposit in a bank is lent to it and becomes the property of the bank, and if lost or stolen, the depositor remains a creditor of the bank, *In re Franklin Bank,* 1 Paige, 254; *Ellis v. Linck,* 3 Ohio St., 66; *Marine Bank v. Fulton Bank,* 2 Wall., 256; *Com. Bank v. Hughes,* 17 Wend., 100; Edwards on Bailment, 66;

and where money paid generally into a bank is passed generally to the owner's credit, and not as a special deposit, the deposit is general, *Keene v. Collier*, 1 Metc. (Ky.), 415; *Wray v. Tuskegee Ins. Co.*, 34 Ala., 58; *Robinson v. Gardiner*, 18 Gratt., 509; the bank cannot apply the deposit to a different purpose from that intended by the depositor without the latter's consent; *Bank of U. S. v. Macalester*, 9 Pa., 475; delivery is not completed unless it is accepted, *Ritter v. Stevenson*, 7 Cal. 388; *Kingston Bank v. Gay*, 19 Barb., 459; *Little v. Willets*, 55 Barb., 125; *Moore v. Tate*, 22 Gratt., 351; *Smith v. Field*, 5 T. R., 211; *Richardson v. Goss*, 3 B. & P., 119; *Bartram v. Farebrother*, Dan. & Ll., 42; *Bedell v. Carll*, 33 N. Y., 584; *Irish v. Nutting*, 47 Barb., 370; *Lunt v. Bank of N. A.*, 49 Barb., 221; *Harris v. Clark*, 3 Comst., 93; *Curry v. Powers*, 70 N. Y., 212; money deposited with a third party to be paid to a creditor does not belong to the latter until accepted by him, *Pease v. Warren*, 29 Mich., 11; *Cushing v. Wyman*, 44 Me., 121; *Strayhorn v. Webb*, 2 Jones (N. C.), 199; *Carroway v. Cox*, Busb., 173.

CAMPBELL, C. J. Plaintiffs brought suit to recover under the money counts a sum of $2000, which they claimed had been received by defendants to their use. The court below made a special finding, the substance of which was as follows:

Plaintiffs had a deposite account, with a little over $3000 to their credit, with a banking firm consisting of John, Charles and Andrew McKinley, in Pontiac. This was a general deposite account.

On the 29th of March, 1876, the banking firm knew that they were embarrassed, but supposed they could pay their debts if they could get an extension. That evening after making up the cash account John McKinley, in pursuance of an understanding with Charles before the cash account was made up in the afternoon, put $2000 in currency in a package with a strap round it

marked "Coots & Topping, private," and threw it back into the money box with the rest of the money of the firm. The money was put up in this way "because the firm supposed their business might be stopped for a time and the money could not be drawn out, and they were afraid plaintiffs might be embarrassed for want of the money, and the money had only been deposited for a few days and plaintiffs were comparatively strangers in Pontiac, and that they did this that plaintiffs might get the money, and they intended the package should be delivered to plaintiffs." When John and Charles had their conversation they had not concluded to make an assignment, and did not so conclude until about nine o'clock that evening, when a general assignment was drawn up to defendants McConnell and Stout, and executed and delivered to them the next morning, March 30th, when McKinley Brothers delivered up their office and property, including the $2000, which was then in the safe, which had not then been unlocked.

Soon after this delivery John McKinley, who had the combination, opened the safe and took out the money box, showed it with the package in it to defendants and told them what he had done, and that he would like to have them give the package to plaintiffs. After taking advice they were advised they could not do so. John McKinley restored the box and package to the safe and in defendant's presence directed the book-keeper to charge plaintiffs with $2000 as of the previous day. No check or memorandum was made as to the $2000, and plaintiffs knew nothing about it until a day or two after the assignment. Defendants on a subsequent demand refused to give the package or the money to plaintiffs.

On these facts the circuit judge held there was no cause of action.

The plaintiffs rest their right to recover on the ground that the act of John McKinley was equivalent to the creation of a trust in favor of plaintiffs whereby the

package of money became irrevocably set apart to their use.

The case was argued with great ability on this hypothesis, and it was claimed that such a trust in favor of creditors stood on as good a footing as any other similar trust, resting on an intention to devote the fund to the benefit of the *cestui que trust*.

Upon a review of the facts we do not think the finding establishes any such case, and we do not consider it necessary to discuss the doctrines referred to.

The case finds there was a general deposite account, which was therefore open to draft, and which in the ordinary course of business would be checked out from time to time and augmented from time to time by new deposites. It was competent at any time for the bank to tender the full balance due, but plaintiffs could not have been compelled to receive any less.

The utmost that can be claimed under this finding is an attempt to apply $2000 upon a much larger debt, with no attempt to communicate with the creditor until other rights had intervened. If plaintiffs had afterwards declined receiving this package it can hardly be claimed that any trust existed. It was not a case of setting apart collateral securities. It was a money payment, or it was nothing.

The charging over to plaintiffs on the 30th could have no force as against the intermediate assignment. If the money was not completely set apart on the 29th it necessarily passed to the assignees.

It is evident from the finding that on the 29th this $2000 formed a part of the cash on hand as shown on the day's balances, and that on that same evening plaintiffs had $3000 and upwards credited, and were not debited with the money put in the package.

The finding does not aver, and the judge evidently did not mean to aver, that anybody understood or intended that this package of money at the moment of its deposit in the money box became *ipso facto* a pay-

ment of so much upon the general balance, and had become irrevocably the property of plaintiffs. He finds expressly that it was intended the package should be delivered to plaintiffs, and until such delivery there could be no more than an intent to deal with the bank's own property—or in other words, an intent to make a future payment.

There is no finding—and evidently none was intended —that the banking firm considered themselves at the time as ceasing to have any control over this money. The endorsement made on the package of an unsigned memorandum is no transfer, and its language was not enough of itself to explain the transaction. Taking the whole finding together, it indicates no design to pass any present title to plaintiffs.

But even if it did, the difficulty is insuperable that a partial payment or tender of payment is inconsistent with a creditor's rights, and can only be operative when he consents to receive it. Until, therefore, the plaintiffs had accepted this package, it—on the best possible theory for them—was an offer which could at any time be withdrawn before acceptance, and which was withdrawn and annulled by the general assignment from which it was not excepted.

We can see nothing in the case to justify a legal conclusion that this money did not belong to the bank at the date of the assignment.

The judgment must be affirmed with costs.

The other Justices concurred.